THE AMERICAN INVESTMENT COMPANY v. FLORA A. COULTER, M. R. LAUGHLIN, *et al.*

No. 195.*

1. EVIDENCE—*Incompetent*—"*Adverse Party*" *Defined.* The words "adverse party," as used in section 322 (now 333) of the code of civil procedure (Gen. Stat. 1889, ¶ 4417, Gen. Stat. 1897, ch. 95, § 333), are not limited to the adversary positions of plaintiff and defendant, but affect any party, whether plaintiff or defendant, whose interests are actually adverse to those of another party to the action who appears in the capacity of executor, administrator, heir at law, next of kin, surviving partner, or assignee, where the latter has acquired title to the cause of action immediately from a deceased person.

2. MORTGAGE—*Misdescription of Land—Notice to Subsequent Grantees.* When the plaintiff sought reformation and foreclosure of a real-estate mortgage, as against subsequent grantees of the mortgagors, and its petition alleged that the mortgage was in-

*Reversed by supreme court.   See 61 Kan. p.—, 60 Pac. 1098.—REP.

tended to convey land in range 7 in Rice county, Kansas, but that by mistake it was described as being in range 17, the latter lying entirely outside said county, and where the general index in the office of the register of deeds of that county showed that the mortgage conveyed land in range 17, and the numerical index relating to the southeast quarter of section 6, township 18, range 7, described the mortgaged tract as being in range 17, and the record of the mortgage itself also described the land as being in the last-named range, *held*, that such records did not charge the subsequent grantees with constructive notice that the mortgage conveyed, or was intended to convey, land in range 7.

Error from Rice district court; ANSEL R. CLARK, judge. Opinion filed June 19, 1899. Affirmed.

### STATEMENT.

IN November, 1887, George W. Barber and his wife executed and delivered to the plaintiff their promissory note for the principal sum of $550 and a real-estate mortgage to secure the payment of the note. The mortgage purported to convey land in Rice county, Kansas, but described it as being the west one-half of the southeast quarter of section 6, township 18, range 17, west of the sixth principal meridian. In March, 1891, the mortgagors conveyed eighty acres of land, described as the west one-half of the southeast quarter, section 6, township 18, range 7, in Rice county, by deed of quitclaim to William Coulter, jr., who in August of that year conveyed the tract to M. R. Laughlin by warranty deed. Neither deed made reference to any mortgage. At the time they made the said conveyance the Barbers owned no other real estate. In August, 1892, the plaintiff discovered that by mistake the mortgage described the Barber land as being in range 17 instead of range 7, as intended. The land described in the mortgage would be more than forty miles west of the western boundary of Rice county. In an action to reform the mortgage by making the description to

read "range 7," instead of "range 17," the mort-
gagors and Coulter and Laughlin were made defend-
ants. Personal judgment was asked as against the
mortgagors and Coulter, it being alleged that the
latter bought the land with notice of the existence of
the mortgage, and that he had assumed the payment
thereof. It was also alleged that Laughlin had actual
notice of the existence of the mortgage, and that he
was not a *bona fide* purchaser of the property.

In their answers, Coulter and Laughlin denied no-
tice and knowledge of the alleged fact that the Bar-
bers had ever attempted to place a mortgage on their
Rice county land. After answering, Coulter died,
and the action was revived against his wife, as ad-
ministratrix of his estate, and his minor children.
By agreement, the answer filed by the deceased was
treated as the answer of the administratrix and of the
minor defendants. The mortgagors did not answer
or otherwise plead, but were sworn as witnesses for
the plaintiff, which sought to prove by them that
William Coulter, jr., had actual knowledge of the ex-
istence of the mortgage which was supposed to cover
the land conveyed to him by the Barbers, and that he
orally assumed and agreed to pay the mortgage debt
as a part consideration for such conveyance. The
court excluded this offered testimony, holding it to be
within the inhibition of section 322 (now 333) of the
code, which provides that "no party shall be allowed
to testify in his own behalf in respect to any transac-
tion or communication had personally by such party
with a deceased person, when the adverse party is the
executor, administrator, heir at law, next of kin, sur-
viving partner or assignee of such deceased person,
where they have acquired title to the cause of action
immediately from such deceased person."

The plaintiff introduced in evidence the reception record, the general index, and the numerical index, as kept by the register of deeds of Rice county. From the reception record, it appears that on November 27, 1887, an instrument in writing from George W. Barber as grantor, to the plaintiff as grantee, was received for record. In addition to these facts, the general index disclosed that such instrument was a mortgage which conveyed the west one-half of the southeast quarter of section 6, township 18, range 17, and that the same was recorded in volume 32, at page 163. The numerical index, under the caption of the "southeast quarter of section 6, township 18, range 7," sets forth the foregoing data, except that under the head of "description of land" this entry appears : "West half (range 17)." The court rendered personal judgment against the mortgagors, and judgment for costs against the plaintiff as to the other defendants. The Barbers did not except to the entering of the said judgment and have not been made parties to the proceedings in error.

Keller & Dean, for plaintiff in error.
J. W. Brinckerhoff, for defendants in error.

The opinion of the court was delivered by

MILTON, J. : A preliminary question arises on the motion filed by the defendants in error to dismiss the petition in error for the reason that the mortgagors were not made parties to the appellate proceedings. We think the motion ought to be overruled, as it appears that a reversal of the judgment in favor of the plaintiff might benefit but could not in anywise injure the mortgagors. The exclusion of the offered testimony of the mortgagors in respect to the alleged transaction between themselves and William Coulter, jr.,

deceased, whereby the latter orally assumed and agreed to pay the mortgage in controversy, is complained of by counsel for plaintiff in error in their brief, their principal contention being that the Barbers were not adverse parties in their relation to the other defendants. We are unable to agree with this view. While the mortgagors did not plead in the action, their interests were clearly adverse to those of Mrs. Coulter and her children. Had the offered testimony been received, its effect might have been to charge the decedent's estate with the primary liability for the payment of the mortgage debt, a result clearly advantageous to the mortgagors.

In the case of *Shorten v. Judd*, 56 Kan. 43, 42 Pac. 337, Mrs. Mott, one of the defendants, testified in behalf of the plaintiff, her minor son, and at the same time in her own behalf, concerning a transaction or communication with William Judd, deceased, the executor of the decedent's will, being a party defendant. The court, after holding the reception of this testimony erroneous, said : "On account of this error the judgment must be reversed ; but as Mrs. Mott has now disclaimed any interest, she will be a competent witness as to the alleged marriage, on the next trial." From the above decision, it appears that the words "adverse party," as used in section 322 of the code (Gen. Stat. 1889, ¶ 4417, Gen. Stat. 1897, ch. 95, § 333), are not to be limited to the adversary positions of plaintiff and defendant, but affect any party, whether plaintiff or defendant, whose interests are actually adverse to those of another party to the action who appears in the capacity of an executor, administrator, heir at law, next of kin, surviving partner, or assignee, where the latter has acquired title to the cause of action immediately from a deceased person.

Another important contention of counsel for plain-

tiff in error is that the reception record and the index records in the office of the register of deeds of Rice county imparted constructive notice to William Coulter, jr., and to his grantee, Laughlin, as to the fact that plaintiff's mortgage was intended to cover the Barber land in that county. The extent to which indexes of registration records impart constructive notice has received much attention from the courts of last resort in many of the states, but does not appear to have been fully determined by the supreme court of this state. In the case of *Poplin v. Mundell*, 27 Kan. 138, the court considered the effect of the delay of the register in making an entry in his receiving book of deeds deposited with him for record. On this point the opinion reads:

"It seems to us that when the party holding the title presents his deed, duly acknowledged and certified, to the register of deeds for record and demands that it be placed upon record, and the register thereupon accepts the same, and duly indorses it filed of the date it was so presented, such party has discharged his whole duty to the public, and his muniment of title cannot be shaken by any subsequent purchaser."

Further on in the opinion occurs this statement:

"The conveyance itself was properly recorded at length, and although, taking the evidence of plaintiff alone, it may be said that she was misled by the temporary omission on the receiving book, we cannot bring our minds to the conclusion that the delay in making the entry deprived the record of the power of imparting constructive notice of its existence and contents to her."

The court also said:

"If the question of total omission on the part of the register of deeds was before us, we would be inclined to hold the law does not impose upon the party

holding the title the responsibility of seeing that the duties prescribed by the statute upon the register for the protection and security of other parties are in fact faithfully discharged by such officer.''

The inference from this decision is plain that, in the opinion of the supreme court, the indexes alone do not impart constructive notice as to the contents of registration records.

In Wade on Notice (2d ed.), section 165, it is said : '' Where, however, the question has come up directly for decision, it has been held, in the majority of cases, that the failure to index is an act of misprision, for which the officer is liable to the searcher of the record who is thereby misled to his injury.''   And in section 173 : '' But the current of authority seems to be decidedly against the doctrine that the index is an essential part of the record.''

It may be said, however, that the entries in the reception record and in the indexes were sufficient to put William Coulter, jr., and M. R. Laughlin upon inquiry, at the date of their respective purchases of the land, concerning the title thereof.   The question then arises, How far should such inquiry have been pursued?   The reception record showed that the mortgage in question had been filed for record ; the general index disclosed that such mortgage described the land as being in range 17 ; the numerical index, while indicating by its heading that the land was in range 7, in the description thereof gave its location as being in range 17.   Which index should be regarded as sufficient to put a seacher upon inquiry as to the existence of the mortgage against the land which was finally conveyed to Laughlin?   Certainly not the general index, for it stated that the land was in range 17. It is evident that the numerical index was, at the best,

ambiguous. From either of these indexes a searcher would have ascertained that the instrument was recorded in book 32. Referring to book 32 he would have found the land described as being in range 17. In our opinion that would have ended the inquiry, and nothing short of proof of actual notice or knowledge on the part of the subsequent grantees as to the mistake in the descriptive portion of the mortgage would have entitled the plaintiff to a reformation thereof as against such grantees.

In the case of *Shoals v. Wilsey*, 11 Iowa, 261, the land was described in the mortgage as being in the northwest quarter of the northeast quarter of a certain section, and the owner of the mortgage sought a reformation thereof so as to describe the southwest quarter of the northeast quarter of the section and to foreclose the same against the last-named tract, after the sale of a portion thereof to an innocent purchaser without notice of the existence of the mortgage against said lands other than the notice imparted by the public record. The law of that state required the recorder to keep an index or entry book, in which, when an instrument was filed for record, he should enter the names of the parties thereto, the date of filing, the date and nature of the instrument, the book and page where recorded, and the description of the property conveyed. The court, after referring to the requirements of the registry law, and remarking that under the system of that state titles to and encumbrances on property could be traced and searched for, not only through the names of parties, but by the description of the property as contained in such index, said :

"A searcher for encumbrances, for instance, would have no occasion to look beyond the index book until he found a piece of property which, in description, would correspond with that the title of which he was

investigating, and it would be strange indeed that he should, under such circumstances, be charged with a knowledge of facts recited in a mortgage given on another and distinct piece of property.''

If we follow the doctrine of the foregoing case, it would be necessary to hold that the indexes were insufficient to impart notice to the grantee of the Barbers that the latter had mortgaged, or intended to mortgage, land in range 7 ; and if we hold that such indexes would have required the searcher to find and read the record of the mortgage given by the Barbers to the plaintiff, the reading thereof would end the inquiry, as already remarked.

In *Lessee of Jennings v. Wood*, 20 Ohio, 261, the court, in its opinion said : '' The reason that a party is chargeable with constructive notice is that by an examination of the record he will have actual notice.'' And in the syllabus of the same case the court declared '' that a party can only be chargeable with constructive notice from the record when the record would give him actual notice.''

We shall not attempt to lay down any general rules relating to registry records and indexes thereof, as it is generally true that each case involving entries in such records must be decided according to its own peculiar facts. Under the facts of the present case, we hold that neither actual nor constructive notice was shown on the part of William Coulter, jr., and M. F. Laughlin, or either of them, as to the existence of a mortgage, actual or intended, against the west one-half of the southeast quarter of section 6, township 18, range 7, in Rice county. The judgment of the district court is affirmed.